# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:17CR00020-002 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SANSON P. RODRIGUEZ,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst and Zachary T. Lee, Assistant United States Attorneys, Abingdon, Virginia, for United States; Stephen R. Wills, Roanoke, Virginia, for Defendant.*

The defendant has filed a motion seeking to enforce a written plea agreement that the government contends is unenforceable due to a mutual mistake of fact. For the reasons that follow, I will not enforce the plea agreement.

I.

An evidentiary hearing has been held on the defendant's motion. The following are my findings of fact, based upon the evidence presented and the court's uncontested records.

The defendant, Sanson P. Rodriguez, was charged by criminal complaint on June 19, 2017,[1] with conspiring to possess with the intent to distribute methamphetamine. He was arrested and the Federal Public Defender for this

---
[1] All of the dates hereafter mentioned are in 2017.

District was appointed to represent him. Nancy C. Dickenson, an Assistant Federal Public Defender, appeared for the defendant at his initial appearance and at a later detention and probable cause hearing held on June 29. Immediately following that hearing, AFPD Dickenson requested Assistant United States Attorney Zachary T. Lee, the prosecutor in the case, to propose a written plea agreement for her client.

On July 7, AUSA Lee provided AFPD Dickenson with a proposed written plea agreement. While no indictment had been retuned at that time, the grand jury did in fact indict defendant Rodriguez along with 23 other defendants on July 10. Rodriguez was charged with conspiring to possess with intent to distribute and distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and using a communication facility in committing and causing the facilitation of a felony drug offense, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 843(d) (Count One), as well as using and carrying and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three).

The proposed plea agreement prepared by AUSA Lee (which will be referred to as the First Plea Agreement), permitted Rodriguez to plead guilty to a lesser included offense of Count One, in violation of 21 U.S.C. § 841(b)(1)(C). The difference between the Indictment's charge and the First Plea Agreement's proposal was substantial, in that it reduced the statutory range of punishment for

Count One from a minimum of ten years and a maximum of life imprisonment to a maximum of 20 years, with no mandatory minimum. The proposed agreement also required Rodriguez to plead guilty to Count Three, which required a mandatory minimum sentence of five years, to be consecutive to any other sentence imposed. *See* 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii).

The First Plea Agreement also provided for a stipulation by the parties that the base offense level applicable to the defendant under U.S. Sentencing Guideline Manual ("USSG") § 2D1.1 (2016) would be 32, representing 1.5 kilograms of a mixture or substance containing a detectable amount of methamphetamine. The government also agreed to recommend a sentence within the applicable guideline range.

The case was set for trial to begin December 11. Because the volume of discovery required substantial review and investigation, AFPD Dickenson did not discuss the First Plea Agreement with Rodriguez in any detail for some time, except to briefly advise him that the government had offered a plea agreement that they needed to discuss. She also told him that with the proposed recommended guideline range contained in the First Plea Agreement, he could expect a sentence of "around 15 years." Tr. 22:12, ECF No. 328.[2]

---

[2] Dickenson determined that Rodriguez had a Criminal History Category of I, and with a Base Offense Level of 32, reduced by acceptance of responsibility, he would have a guideline range of 87 to 108 months as to Count One, together with a mandatory

On October 30, having heard nothing from defense counsel, and after obtaining further evidence that the methamphetamine involved in the case was the purer form of the drug known as "ice," which affected the possible guideline sentence, AUSA Lee sent a new written Plea Agreement to AFPD Dickenson by email. This document will be referred to as the Second Plea Agreement. It was substantially different from the First Plea Agreement in that it required a guilty plea to Count One as charged and provided for a stipulated base offense level of 36. After receiving the Second Plea Agreement, Dickenson and Lee engaged in the following email conversation:

> From Dickenson to Lee:
>
> Thanks, Zack.
>
> Is this same plea offer you sent before? Just wanted to make sure.
>
> From Lee to Dickenson:
>
> To tell you the truth I don't remember what was in the previous agreement. Whatever the terms were in the prior agreement, they are withdrawn and now replaced by the agreement sent today.

Gov't Ex. 2, ECF No. 321.

Unfortunately, AFPD Dickenson did not read the Second Plea Agreement. She did not print it out from the email, and while quickly viewing it on her computer, noticed only that the stipulated drug weight of 1.5 kilograms was the

---

consecutive sentence of 60 months as to Count Three. If sentenced at the high end of guideline range, his total sentence likely would be 168 months, or 14 years.

same as the First Plea Agreement. She thus did not realize that the Second Plea Agreement required her client to plead to Count One's maximum punishment of life imprisonment with a minimum term of ten years, as well as a Base Offense Level of 36, representing the "ice" nature of the 1.5 kilograms of methamphetamine, as provided in USSG § 2D1.1(c)(2) (2016).

On November 10, AFPD Dickenson met with Rodriguez, along with a Spanish-language interpreter.[3] She had with her only a copy of the First Plea Agreement, which she mistakenly assumed was the same as the Second Plea Agreement. She and Rodriguez discussed the First Plea Agreement at length, and after about three hours of discussion, Rodriguez agreed to accept the First Plea Agreement and signed it, along with AFPD Dickenson. A few days later, on November 13, AFPD Dickenson personally delivered the signed First Plea Agreement to AUSA Lee at the courthouse, where Lee was in the midst of prosecuting an unrelated criminal trial. Based upon Lee's long and reliable professional relationship with AFPD Dickenson, and assuming that the plea agreement presented to him was the Second Plea Agreement that he had proposed on October 30, he signed it without reading it. On November 15, one of his staff members filed the document with the court.

---

[3] While Rodriguez is a naturalized United States citizen, he apparently does not adequately understand English. According to the Pretrial Services Report prepared upon his arrest, he is 56 years old, without a high school education, and has lived in the United States since 1984. He has been a manual laborer all of his adult life.

AUSA Lee did not learn that he had mistakenly signed the First Plea Agreement until he began receiving inquiries from attorneys for other defendants in the case as to why Rodriguez, an alleged leader of the drug conspiracy, had received such a favorable plea agreement, in contrast to their clients' situations. Lee then examined the filed agreement and learned the truth. He promptly filed a Notice of Intent to Declare Plea Agreement Void, contending that the First Plea Agreement was unenforceable because of mutual mistake, and requesting the court to rule on the matter.

Because of her involvement in creating the mistake, AFPD Dickenson then moved to withdraw from further representation of Rodriguez. I granted the motion and appointed Rodriguez's present substitute counsel, who filed a Motion to Enforce and Confirm Plea Agreement. A hearing was held on November 30, at which both AFPD Dickenson and AUSA Lee testified. Of course, no change of plea hearing has yet been held and Rodriguez's original plea of not guilty to the Indictment is still in effect.

The United States argues that the First Plea Agreement is unenforceable because of the mutual mistake of the parties. Counsel for Rodriguez argues that there has been no mutual mistake, in that Rodriguez personally did not know of the withdrawal of the First Plea Agreement and its replacement by the Second Plea Agreement and that in any event, the presentation of the defendant's signed First

Plea Agreement to AUSA Lee constituted a contractual counteroffer that was accepted by the United States when Lee signed it.

II.

There is no evidence in this case of fraud or overreaching. All of the participants, including defendant Rodriguez, are innocent of any intent to take unfair advantage. The question is simply whether, in accord with my obligation to supervise the fair operation of the plea bargaining system, I must enforce the First Plea Agreement against the government.

Plea agreements are contracts governed by ordinary contract principles. *See Puckett v. United States*, 556 U.S. 129, 137 (2009). Thus, "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk." Restatement (Second) Contracts § 152 (1981); *United States v. Woods*, 59 F. App'x 162, 163 (7th Cir. 2003) ("[A] mutual mistake about the meaning of an essential term in a plea agreement could invalidate a plea.").

There is no doubt here that the parties were operating under a mutual mistake of the material terms of a plea agreement, and in particular whether the defendant would be convicted of a lesser included offense of Count One, substantially reducing his possible sentence of imprisonment. While it is true that

Rodriguez himself did not create the mistake, he gave his assent to the contract based only upon the erroneous information provided to him by his lawyer. The presentation of the First Plea Agreement to AUSA Lee was not intended by Rodriguez or his attorney to be a counteroffer, because they erroneously believed that they were accepting the offer made by the government and gave no objective indication otherwise.

Even accepting that plea agreements are unique contracts and must be interpreted with "special due process concerns for fairness and the adequacy of procedural safeguards," *United States v. Ataya*, 864 F.2d 1324, 1329 (7th Cir. 1988), I find that the defendant's rights are not violated by refusing to enforce the First Plea Agreement. The defendant has not yet entered a plea, and is still open to further negotiations with the government, or to go to trial if he desires. If he and his attorney are not ready for the upcoming trial, I will grant a postponement under these unique circumstances and permit any late pretrial motions by the defendant that were not made because of the present dispute.

III.

For these reasons, it is **ORDERED** that the Defendant's Motion to Enforce and Confirm Plea Agreement, ECF No. 318, is DENIED.

ENTER: December 4, 2017

/s/ James P. Jones
United States District Judge